United States District Court
District Of Maine

John Doe,

Plaintiff,

v.

York County, Sheriff's Department; Robert Hayes; William Vachon; and Joseph Fagone.

Defendants.

Civil Action No.

**Complaint; Demand for Jury Trial; and Injunctive Relief Sought**

John Doe complains against (1) York County Sheriff's Department; (2) York County Sergeant Robert Hayes; (3) York County Detective William Vachon; and (4) City of Portland Detective (retired) Joseph Fagone as follows:

**Summary of the Action**

1. Two York County law enforcement officials invaded a business owner's home to rough him up over an $850 consumer dispute.

2. Sergeant Robert Hayes and Detective William Vachon intentionally broke the law as a favor to a retired City of Portland detective who wanted the $850 refunded. "You fucked with the wrong person," they told John Doe.

3. When John Doe called 911 to report this home invasion, Hayes and Vachon threw him on the floor, took his phone, and falsely arrested him for the alleged (but fictitious) crime of calling 911 in the presence of police officers.

4. This use of official police powers to terrorize and hold up a private citizen in his own home to collect a private debt for another police officer violated the clearly established constitutional rights of John Doe and cannot be tolerated in a free society.

**Parties**

5. Plaintiff, John Doe, is a resident of York County, Maine. This Complaint uses pseudonyms for the name of the Plaintiff and his wife to protect them from retaliation and harassment by the police, from the reasonable fear of such retaliation and harassment when they have already endured severe retaliation of that type, and from additional stigmatization, trauma, and personal embarrassment. Plaintiff's identity is known to all of Defendants, and Plaintiff will voluntarily disclose his identity if the Court determines use of a pseudonym is not warranted in this action.

6. Defendant York County is a governmental entity duly organized and existing under Maine law. The Sheriff's Department is a department of York County.

7. Defendant Robert Hayes is a Detective for the York County Sheriff's Department. He is being sued in his personal and individual capacity, as well as in his official capacity.

8. Defendant William Vachon is a Detective for the York County Sheriff's Department. He is being sued in his personal and individual capacity, as well as in his official capacity.

9. Defendant Joseph Fagone is a retired police officer for the City of Portland who resides in Portland, Cumberland County, Maine. He is being sued in his personal and individual capacity.

**Jury Trial Demand**

10. Under Fed. R. Civ. P. 38(b), Plaintiff hereby demands trial by jury on all issues triable to a jury.

**Jurisdiction and Venue**

11. This action arises under 42 U.S.C. §§ 1983, 1985, and 1988. This Court has proper subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1341 (federal question) and 1343 (civil rights). This Court has proper supplemental jurisdiction over Plaintiff's state law claim, which is related and form part of the same case or controversy as the federal claims, under 28 U.S.C. § 1367(a).

12. Venue is proper in the District of Maine under 28 U.S.C.

§ 1391(e) (3) because Plaintiff resides in Maine. Under Rule 3(b) of the Rules of this Court, this action is properly filed in Portland because most of the events occurred in York County.

**Facts**

13. In 2011, John Doe and his wife Jane Doe lived together in Buxton, a small town in York County, and worked together running a small business.

14. On Sunday, August 28, 2011, the Does received a phone message threatening to "bury" them if they did not refund the entire charge of $850 for transportation services they provided the day before.

15. On Thursday, September 1, 2011, Sergeant Robert Hayes and Detective Bill Vachon of the York County Sherriff's Department came to the home of John and Jane Doe.

16. After hearing a knock, John Doe opened the front door and Hayes and Vachon flashed their York County detective badges and asked John Doe if they could come in.

17. Seeing their badges, John Doe allowed Hayes and Vachon to enter his home, based on the reasonable but false assumption that they were there to conduct legitimate police business.

18. After the door closed behind them, either Hayes or Vachon asked John Doe if he knew why there were there. John Doe said he did not know.

19. Hayes replied, "You fucked with the wrong person."

20. Hayes told John Doe that one of the passengers the Does had transported on August 27 was the daughter of a 25-year Portland Police veteran.

21. Recognizing that he had been ambushed based on false pretenses, John Doe tried to call 911, but Hayes and Vachon threw him to the floor and tightly handcuffed him.

22. One of the officers got on the phone with the 911 operator and said that the York County Sherriff's Department was on the scene and dispatch did not need to send anyone.

23. Hayes and Vachon told John Doe, falsely, that it was illegal to call 911 in the presence of a police officer.

24. Hayes and Vachon forced John Doe out of his home, put him in an unmarked police cruiser, and drove him a short distance away.

25. Hayes and Vachon left John Doe handcuffed in the car. For 45 minutes, they pressured him to refund the $850 charge.

26. Doe asked Vachon if he would be taken to jail.

27. Vachon told Doe he was under arrest "for being an asshole."

28. Hayes and Vachon had no reasonable basis for arresting John Doe for any crimes.

29. John Doe asked to be read his rights and that he be allowed to make a phone call and have his handcuffs removed.

30. Vachon refused and instead replied, "You know your fucking rights."

31. Hayes left the car to call Jane Doe, John Doe's wife.

32. When Jane Doe answered the phone call, Hayes asked where she was and told her that he was at her home.

33. Jane Doe went home and found Hayes at her doorstep.

34. Hayes showed Jane Doe his badge and claimed that he was there on behalf of the Massachusetts State Police.

35. Hayes demanded Jane Doe refund the disputed charge and told her he "doesn't make deals."

36. Hayes falsely claimed that he had a video showing Jane Doe stealing money and a digital camera from the passengers the Does had transported on August 27.

37. At around 7:45 p.m., Vachon arrived back at the house with John Doe in handcuffs.

38. Hayes instructed the Does to go to a parking lot outside a nearby bank by 8:00 p.m.—within 15 minutes—to hand over the money he claimed they owed.

39. Before leaving, Hayes and Vachon demanded that the Does sign a form stating that Hayes and Vachon had not used excessive force.

40. Terrified, the Does complied and signed the forms.

41. Rather than go to the bank, the Does fled their home and stayed at the home of Jane Doe's mother house for the next several days.

42. John Doe had visible bruising for at least a week caused by being tightly handcuffed while being forced out of his home, into a vehicle, and back again.

43. After calling multiple agencies to report the brutal terrorism by Hayes and Vachon, the Does were eventually forwarded to a Major at the York County Sheriff's Department, who confirmed that Hayes and Vachon worked for York County's Sheriff's Department.

44. The Major told the Does the Sheriff's Department would handle the matter internally.

45. York County never took any appropriate corrective action and instead ratified and approved of the unconstitutional conduct of Hayes and Vachon.

46. On September 8, 2011, the Does received a voicemail message at their home from Joseph Fagone, a retired Portland police officer, concerning the events on August 27, 2011.

47. The message from Joseph Fagone stated the following:

> This message is for [Jane Doe]. My name is Joe Fagone. My daughter was involved in that limousine incident in Gillette Stadium. I am a detective with criminal investigations for the state of Maine. I've been working behind the scenes with Sergeant Hayes. My understanding is that you are playing games with [name omitted] and you're not willing to pay. That's fine, but let me tell you, the agreement was that you guys were going to make this right. I am going to get a warrant for you and your husband and I guarantee you I will be out to that house. We negotiated in good faith with you. If you're playing games, that's what's going to happen. I suggest you call her—[name omitted]—and you make this right. If you choose not to do that—the agreement was you were going to pay her back—if you choose not to do that, that's fine, but the alternative is criminal charges. And you can bet on that. If you want to play games, we will play games. Have a good night.

48. The criminal charges referred to by Fagone were never filed.

49. Defendants acted with actual malice and reckless indifference to the federally protected civil rights of John Doe.

50. Defendants intentionally interfered or attempted to intentionally interfere— by physical force or violence and trespass on property and by the threat of physical force or violence against a person or trespass on property—with the Does' exercise and enjoyment of rights secured by the Constitutions and laws of the United States and the State of Maine.

## Legal Claim

51. The allegations in paragraphs 1-50 are repeated.

52. Based on these allegations, Defendants, while acting under color of state law, violated the constitutional rights of John Doe, including his rights (a) under the Fourth and Fourteenth Amendments of the United States Constitution and corollary provisions of the Constitution of the State of Maine to be free of illegal arrest and excessive force and (b) under the Fourteenth Amendment of the United States Constitution and corollary provisions of the Constitution of the State of Maine to be accorded procedural due process.

53. Fagone conspired to further the constitutional violations by Hayes and Vachon.

54. Hayes and Vachon conspired to further Fagone's violations of the Maine Civil Rights Act.

55. The law supporting these claims is clearly established.

56. Hayes and Vachon's physical kidnapping and detention of John Doe constituted an illegal arrest for at least two separate reasons.

57. First, Hayes and Vachon had no reason to believe John Doe had violated the law and thus they had no pretense of probable cause to justify involuntarily removing John Doe from his own home.

58. A warrantless arrest without probable cause to believe a crime has occurred is per se unreasonable. *United States v. Watson*, 423 U.S. 411, 417 (1976).

59. Second, Hayes and Vachon carried out the arrest using excessive force in violation of clearly established law. John Doe was arrested for no crime; he was alone at his home, made no threatening movements, and put up no physical resistance.

60. The severity of any crime at issue was non-existent; John Doe posed no immediate threat to the safety of the officers or others; and John Doe was not actively resisting arrest or attempting to evade arrest by flight. *See Alexis v. McDonald's Rests. of Mass., Inc.*, 67 F.3d 341, 346 (1st Cir. 1995).

61. By decreeing that John Doe immediately owed a substantial and unappealable fine without giving him a chance to dispute the charge, Hayes and Vachon violated John Doe's clearly established right to due process.

62. It is clearly established that imposing a binding debt impinges on a constitutionally protected property interest in being free of financial obligations. *Connecticut v. Doehr*, 501 U.S. 1 (1991); see also *Clukey v. Town of Camden*, 717 F.3d 52 (1st Cir. 2013) ("In every case where a protected property interest is at stake, the Constitution requires, at a minimum, some kind of notice and some kind of opportunity to be heard.")

63. John Doe was given no notice or opportunity to be heard before Hayes and Vachon demanded that he immediately pay $850 on threat of further arrest and harassment.

64. Fagone is liable under federal law for conspiring with state actors Hayes and Vachon because Fagone was a willful participant in joint activity with Hayes and Vachon to violate the federal constitutional rights of John Doe.

65. A meeting of minds occurred between Fagone, on one hand, and Hayes and Vachon, on the other hand, to further the violation of John Doe's federal constitutional rights. *See, e.g., Casa Marie, Inc. v. Sup. Ct. of P.R.*, 988 F.2d 252, 259 (1st Cir. 1993); *Wagenmann v. Adams*, 829 F.2d 196 (1st Cir. 1987).

66. By his own words, retired Portland police officer Fagone was acting in concert with state agents Hayes and Vachon. His voicemail specifically states, "I've been working behind the scenes with Sergeant Hayes."

67. Fagone's voicemail also shows intimate knowledge of the unconstitutional actions Hayes and Vachon took on September 1, 2011 to collect a private debt.

68. As a result of Defendants' unconstitutional conduct, John Doe has suffered and is continuing to suffer personal injuries, including but not limited to, chilling of constitutional rights, impairment of reputation, personal humiliation and embarrassment, mental anguish and suffering,

emotional pain and distress, suffering, inconvenience, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

69. Plaintiff requests relief—including but not limited to under 42 U.S.C. §§ 1983, 1985 and 1988; and under the Maine Civil Rights Act, 5 MRS §§ 4681-4685—against Defendants as follows:

a. Enter declaratory relief that Defendants violated Plaintiff's constitutional civil rights and the Maine Civil Rights Act, 5 MRS §§ 4681-4685.

b. Enter injunctive relief ordering Defendant York County Sheriff's Department to:

i. Provide effective civil rights training for all police officers, detectives and supervisors;

ii. Provide this training for two years after the date judgment is entered to all new police officers, detectives, and supervisory employees, within 60 days of the beginning of their employment;

iii. Maintain attendance sheets identifying each person who attended each training session and forward a copy of the attendance sheets to Plaintiff's counsel within seven days of each training session;

iv. Post at the York County Sheriff's Department a copy of a remedial notice detailing the judgment in this case as well as the order providing injunctive relief;

c. Award compensatory damages in amounts to be determined at trial by the jury and prejudgment interest thereon;

d. Award punitive damages in amounts to be determined at trial by the jury (except punitive damages are not being requested against defendant York County) and prejudgment interest thereon;

e. Award Plaintiff full costs and reasonable attorneys' fees and litigation expenses; and

f. Award such further relief as is deemed appropriate.

Respectfully submitted,

Date: August 31, 2017

/s/ David G. Webbert
David G. Webbert
Johnson, Webbert & Young, LLP
160 Capitol Street, P.O. Box 79
Augusta, Maine 04332-0079
Tel: (207) 623-5110
dwebbert@work.law

/s/ Max I. Brooks
Max I. Brooks
Johnson, Webbert & Young, LLP
160 Capitol Street, P.O. Box 79
Augusta, Maine 04332-0079
Tel: (207) 623-5110
mbrooks@work.law

*Attorneys for Plaintiff*